IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

BLUESTONE COAL CORPORATION, a
West Virginia Corporation, and,
DOUBLE-BONUS MINING COMPANY,
a West Virginia Corporation,

    Plaintiffs,

v.     Civil Action No. 5:15-cv-04905

PINNACLE MINING COMPANY, LLC,
a foreign corporation,

    Defendant.

**VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

For their Verified Complaint against Defendant Pinnacle Mining Company, LLC ("Pinnacle"), Plaintiffs Bluestone Coal Corporation and Double-Bonus Mining Company state as follows:

## PARTIES

1. Plaintiff Bluestone Coal Corporation ("Bluestone") is a West Virginia corporation having its principal place of business in Beckley, West Virginia. Bluestone is the permit holder for underground coal mining operations at Mine No. 65 located in Wyoming County, West Virginia.

2. Plaintiff Double-Bonus Coal Company ("Double-Bonus") is a West Virginia corporation having its principal place of business in Beckley, West Virginia.

3. Defendant Pinnacle Mining Company, LLC ("Pinnacle") is a Delaware corporation having its principal place of business in Ohio.   Pinnacle is presently doing business in Wyoming

County, West Virginia where it operates a coal mine and conducts coal mining operations, among other things.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5. Venue is proper in this Court because a substantial part, if not all, of the events or omissions giving rise to the claims herein occurred in this judicial district, and a substantial part, if not all, of the property that is the subject of this action is situate in this judicial district.

## FACTUAL BACKGROUND

6. At all times relevant hereto, Bluestone held the appropriate mining permits for Mine No. 65 (West Virginia Department of Environmental Protection (WVDEP) Permit No. U-4002-02 and Federal MSHA ID 46-09020). Coal Mine No. 65 operates within the Little Fire Creek coal seam and is situate in Wyoming County, West Virginia. Operating rights under these permits have been assigned to Plaintiff Double-Bonus.

7. Pinnacle is the active operator of an underground mining operation which operates under WVDEP Permit No. UO-204-83A and MSHA Id. 46-01816 ("Pinnacle Mine"). The Pinnacle Mine is located several hundred feet below the level of the Bluestone/Double-Bonus Mine No. 65.

8. In early 2013, Pinnacle contacted Bluestone and Double-Bonus seeking permission to drill a vertical borehole shaft from the surface through a void (or inactive) area of Mine No. 65 that was located in a sealed-off area in the "2nd Right" portion of the mine. The borehole shaft

was to be used for the purpose of installing a vertical dewatering system to assist Pinnacle with the control of water in the Pinnacle Mine located approximately 420 feet below Mine No. 65. The vertical dewatering system would include not only drilling the borehole through Mine No. 65 to the Pinnacle Mine below, but also constructing and installing casings, pipes, pumps and other appurtenances for the system to pump water from the Pinnacle Mine to the surface.

9. Pinnacle or its agents prepared and submitted the necessary paperwork with MSHA to conduct the borehole drilling. MSHA approval was necessary because the drilling would necessarily run the risk of fracturing or damaging the strata above Mine No. 65, which could allow the incursion of gases or water into the void areas of the mine endangering personnel in the mine.

10. Parts of the plan were submitted to the MSHA District 12 office and the West Virginia Office of Miners' Health, Safety and Training on May 13, 2013. MSHA subsequently approved the Pinnacle plan.

11. Upon information and belief, the actual drilling of the borehole commenced in February of 2014 by Pinnacle and/or its agent(s).

12. Pinnacle and or its agent(s) drilled the borehole which penetrated through an inactive portion of Bluestone/Double-Bonus Mine No. 65.

13. The portion of the Bluestone/Double-Bonus Mine No. 65 where the borehole was drilled had been sealed-off from the outby areas of Mine No. 65.

14. The inactive, sealed-off portion of Mine No. 65 through which Pinnacle and/or its agent(s) drilled the borehole had been inactive and sealed for approximately eight (8) years prior to the commencement of drilling operations. At the time this area was sealed, it had been dry for a

significant period of time. The Mine was idled but regularly and periodically inspected for a number of items, including gas and water incursions.

15. In March of 2015, Bluestone/Double-Bonus became aware of a dramatic increase in the amount of water behind the sealed areas of its mine. Water began to bypass the existing barriers and seals.

16. On the outby or active side of the seal, efforts were immediately undertaken to pump and dewater. In addition, the valves were opened to allow water to drain from the inactive side of the seal.

17. Based on the elevations, the estimated volume of the voided area and the established record of water flow into the subject area, Bluestone/Double-Bonus engineers, and independent engineers, have confirmed that the amount of water penetrating into the sealed areas of Mine No. 65 has essentially tripled since the commencement of the Pinnacle borehole-drilling project through Mine No. 65, which already has caused Bluestone/Double-Bonus to incur well in excess of $75,000.00 in equipment, resources, costs and damages to existing mining structures, as well as other potential irreparable harm to Plaintiffs' business operations, jobs, production and extraction of mineral reserves.

18. The Pinnacle borehole-drilling project is the sole proximate cause of the dramatic change in the water conditions within the mine.

19. On or about April 2, 2015, while Double-Bonus was actively engaged in preparing the Mine for quick start-up operations, MSHA issued a "107 A Order" for the mine, requiring Plaintiffs to cease operations because of the risks and dangers posed to mine personnel. In conjunction with the appropriate regulatory agencies, Plaintiffs have been working under modified

provisions of the "107 A Order" in an attempt to prevent the loss of the mine, in-place equipment, and coal reserves.

20. Although the economic loss attributable to the loss of Mine No. 65 and its attendant reserves has not been precisely calculated, the potential economic loss and impact on the Plaintiffs and the local community are likely to be in the millions of dollars.

21. On or about April 6, 2015, Plaintiffs, by counsel, notified Pinnacle's existing counsel of the situation and, among other things, requested that counsel notify Pinnacle of a potential claim and requested that all evidence relating to the borehole project be preserved. Because of the likelihood that the borehole was negligently or incorrectly completed, Plaintiffs asked that Pinnacle immediately provide them with all logs, records, reports and other records relating to the project. *See* April 2, 2015, correspondence attached as Exhibit 1.

22. On April 14, 2015, Plaintiffs became aware that there was activity at the surface location of the borehole. Plaintiffs, by counsel, immediately contacted Pinnacle's counsel so as to notify Pinnacle that under the circumstances any activity concerning the borehole could not only constitute the destruction or spoliation of evidence, but also cause further damage to the mine. *See* April 2, 2015, correspondence attached as Exhibit 2.

23. Plaintiffs requested that Pinnacle voluntarily cease and desist from all activity regarding the subject borehole.

24. On April 15, 2015, Pinnacle, through a letter issued by its counsel, stated that it would not honor the Plaintiffs' request to cease activity regarding the borehole and that it intended to proceed with the placement of a surface pump and/or piping into the diameter of the borehole. *See* April 2, 2015, correspondence attached as Exhibit 3.

25. The placement of such piping into the borehole may substantially and permanently alter, change or damage the condition of the borehole, potentially causing additional and more permanent damage to Mine No. 65 and further impairing the ability of all parties to examine, study, and/or preserve potentially critical evidence relating to the defendant's ongoing water incursion event and the defendant's potential claim against Pinnacle or others.

26. Plaintiffs are advised that Defendant intends to install a power station on Friday, April 17, 2015. Thereafter, Plaintiffs further understand that Defendant intends to install a pump and driveshaft within the borehole. These activities will irrevocably alter, modify or destroy the status quo and evidence associated with Plaintiffs' claims herein.

27. If Pinnacle is allowed to engage in further work, modification, or activity regarding the borehole prior to the Petitioner's being able to inspect, survey, or otherwise evaluate the borehole in its existing condition, Plaintiffs will be substantially and irreparably harmed or otherwise prejudiced.

28. Given that Pinnacle drilled the borehole in February 2014 and waited more than a year until April 2015 to take further action to install its dewatering system, the amount of prejudice that Pinnacle may incur as a result of a temporary restraining order or temporary injunction will be minimal or non-existent.

## COUNT I – PRIVATE NUISANCE

29. Plaintiffs adopt and incorporate the allegations set forth in Paragraphs 1 through 28 above as if set forth herein.

30. Defendant's activities have caused a catastrophic inundation of water into Mine No. 65, caused Double-Bonus to cease start-up operations. If not abated immediately,

Defendant's activities may lead to the substantial likelihood of the mine being lost entirely, or idled for a significant period of time, causing the loss of the right to mine substantial coal reserves and damage to or loss of equipment.

31. Defendant's on-going activities in drilling and use of the borehole have caused and continue to cause water to flood Mine No. 65.

32. Defendant's on-going activities constitute a substantial and unreasonable interference with Plaintiffs' private use and enjoyment of their mining rights.

33. The gravity of the harm in potentially losing the mine, equipment, and any reasonable opportunity to extract the minerals pursuant to Plaintiffs' legitimate legal interests outweigh Defendant Pinnacle's rights to drill and use a borehole which is defective or otherwise has failed to properly keep water from flooding Mine No. 65.

34. Defendant's activities constitute a private nuisance per se and are and continue to be undertaken with full notice of the catastrophic harm to Plaintiffs' interests in the extraction of coal from its mine, the related equipment and mine personnel.

35. Defendants activities are and have been undertaken intentionally and with unclean hands.

36. Plaintiffs have no adequate remedy at law to stop Defendant's drilling and use of the borehole to stop the flooding of Mine No. 65.

37. Plaintiffs have contacted Defendant through its counsel in good faith in an effort to avoid litigation or the need for Court intervention.

## COUNT II –NEGLIGENCE

38. Plaintiffs adopt and incorporate the allegations set forth in Paragraphs 1 through 37 above as if set forth herein.

39. Defendant and or its agent(s) or its contractors had a legal duty to exercise reasonable care in properly drilling, encasing, and securing the borehole such that it did not cause subterranean water sources, such as aquifers, to flood Mine No. 65.

40. Defendant breached this duty and failed to exercise reasonable care under the circumstances inasmuch as it drilled a borehole and installed casing in a defective and negligent manner such that an aquifer was breached or otherwise adversely impacted causing portions of Mine No. 65 to be flooded.

41. The possibility of improperly encasing a borehole or improperly causing subterranean water sources to inundate Mine No. 65 was a well-known hazard which reasonably prudent coal operators and their contractors should have taken all reasonable steps to avoid.

42. Defendant and/or its agents and/or its contractors breached the foregoing duties which proximately caused and continues to cause irreparable harm to the Plaintiffs' mining rights, mine operations, personnel and equipment.

## COUNT III – TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTION

43. Plaintiffs adopt and incorporate the allegations set forth in Paragraphs 1 through 42 above as if set forth herein.

44. Because Defendant has and continues to conduct drilling and/or construction activity with respect to the borehole and vertical dewatering system which continue to irreparably harm Plaintiffs and refuses to cease its activities to maintain the status quo so as to determine what

action can be undertaken to save Mine No. 65, Pinnacle is intentionally and with unclean hands depriving Plaintiffs from the peaceful enjoyment of their mining rights.

45. A temporary restraining order and preliminary and permanent injunction are proper because there is a significant likelihood of irreparable harm to Plaintiffs if the temporary restraining order and/or preliminary and/or permanent injunction are denied in that Plaintiffs will likely be unable to recover underground mining equipment or operate its coal mine in the future. MSHA has idled Mine No. 65 and, in the event that the water incursion is not stopped at this juncture, there is a substantial likelihood that it will be flooded and MSHA or other regulatory agencies may determine that the mine and attendant reserves are lost.

46. The likelihood of harm to Defendant if the injunction is granted is minimal and any potential harm which may be caused by the granting of any such injunction is the result of Defendant's unlawful and improper conduct.

47. There is a strong likelihood that Plaintiffs will succeed on the merits of this action based upon the trespass of water by the actions of Pinnacle and/or its agents or contractors under its supervision into Mine No. 65 and the substantial and unreasonable interference Pinnacle's ongoing activities are causing which have directly impaired Plaintiffs' right to explore and extract minerals at Mine No. 65.

48. The mineral estate is being wasted by the conduct and actions of Defendant.

49. It is in the public interest that an injunction be granted to preserve Plaintiffs' mining rights and effectuates the State of West Virginia's public policy of exploration and development of minerals.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Honorable Court grant the following relief:

(a) a Temporary Restraining Order pursuant to Rule 65(b) of the Federal Rules of Civil Procedure which:

1. maintains the *status quo* by prohibiting Defendant, its agents or assigns, from engaging in any further conduct which interferes with Plaintiffs' mining rights, including, but not limited to, any further activity relating to Defendant's borehole or construction or use of a vertical dewatering system through the borehole until further ordered;

2. allows Plaintiffs to enter onto the surface where the Defendant is constructing the borehole to observe, inspect, examine and test the borehole, casing and piping, if any, and vertical dewatering system and affected rock strata, as well as all documents, logs, records, reports, maps, designs, schematic drawings, applications, orders or other documents relating to the design and construction of the borehole (including casing/piping) and its appurtenances;

3. prohibits Defendant, or its agents or assigns, from altering, changing, or modifying the *status quo* of the borehole, or altering, changing, modifying or destroying evidence related to the borehole and the incursion of water caused by the same into Mine No. 65;

(b)     a Preliminary injunction which grants the same relief as averred above as well as requires Pinnacle to produce a report to this Court and Plaintiffs regarding the status of the borehole and vertical dewatering system and plans for the immediate cessation of further incursion or trespass by Pinnacle into Mine No. 65 and/or remediating any incursion of water into Mine No. 65;

(c)     a permanent injunction as necessary to cease further incursion of water into Mine No. 65 by Pinnacle, its agents or contractors; and,

(d)     any such other and further relief as this Honorable Court may deem just under the circumstances.

                           **Respectfully submitted,**

                           **BLUESTONE COAL CORPORATION and DOUBLE-BONUS MINING COMPANY**

                           **By Counsel.**

                           /s/ *R. Scott Long*          04/16/2015
R.   Scott Long, Esquire (#2238)
J. Miles Morgan, Esquire (#5988)
David F. Nelson, Esquire (W.Va. Bar No. 5754)
Hendrickson & Long, PLLC
P.O. Box 11070
Charleston, West Virginia 25339
(304) 346-5500
(304) 346-5515 (fax)

## VERIFICATION

STATE OF WEST VIRGINIA,

COUNTY OF RALEIGH, to wit:

I, **Billy David Altizer**, after being first duly sworn, state that the facts and allegations contained in the **"Verified Complaint for Temporary Restraining Order, Preliminary and Permanent Injunctive Relief"** are true, except as therein stated to be upon information and belief, and that as therein stated to be upon information and belief, I believe them to be true.

_____
**Billy David Altizer**
**Chief Engineer**
**Bluestone Resources, Inc.**

Taken, subscribed and sworn to before me this 16th day of April, 2015.

My commission expires  9/2/2019  .

NOTARY SEAL                         NOTARY PUBLIC



OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
JOHN J PACHUTA
420 MAXWELL HILL ROAD
BECKLEY, WV 25801
My commission expires September 02, 2019